# IN THE UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

AZAEL DYTHIAN PERALES et al.,

(Plaintiff's)

Vs.

City and County of San Francisco Sheriff's Department et al.,
Sheriff Vicki L. Hennessy e.g. or Acting Sheriff
Undersheriff Matthew Freeman e.g. or Acting Undersheriff Sheriff
Paul Miyamoto, Chief Deputy Sheriff or Acting Chief Deputy
John or Jane Doe e.g., Chief Deputy of Internal Affairs Division

County Jail #1
425 7th Street
San Francisco 94103
Captain J. Pecot e.g. or Acting Captain

County Jail #2
425 7th Street
San Francisco 94103
Captain M. Fisher e.g. or Acting Captain

Central Records Unit
850 Bryant Street
San Francisco 94103
Lieutenant J. Sanford or Acting Captain

County Jail #4
850 Bryant Street
San Francisco 94103
Lieutenant S. Wheeler (Acting Facility Commander) or Acting Lieutenant

1

County Jail #5
#1 Moreland Drive
San Bruno 94066
Captain K. Paulson e.g. or Acting Captain

Jail Wards 7D/7L
1001 Potrero Ave.
San Francisco 94110
Sergeant Del Rosario e.g. or Acting Captain

Classification Unit
425 7th Street
San Francisco CA 94103
Lieutenant Velasco e.g. or Acting Captain

Kathy Gorwood e.g. Chief Deputy Sheriff or Acting Chief Deputy
Jason Jackson e.g. Sheriff's Captain or Acting Sheriffs Captain
Ali Riker e.g. Director of Programs or Acting Director of Programs
Hubert Hunter, Sheriff's Lieutenant or Acting Sheriff's Lieutenant
San Francisco City Hall et al.,
Room 456
1 Dr Carlton B. Goodlett Pl.
San Francisco, CA 94102
Phone: 415-554-7235

City of San Francisco et al.,
Edwin M. Lee e.g. Mayor or Acting Mayor
Office of the Mayor
City Hall, Room 200, 1 Dr. Carlton B. Goodlett Place,
San Francisco, CA, 94102
415-554-6141

Councilmember Mark Addiego or Acting Councilmember
Vice Mayor Liza Normandy or Acting Councilmember /Vice Mayor
Councilmember Karyl Matsumoto or Acting Councilmember
Councilmember Garbarino or Acting Councilmember

City Hall of San Francisco et al.,
400 Grand Ave.
South San Francisco, CA 94080
Ph: 650-829-6601

City & County of San Francisco Board of Supervisors et al.,
1 Dr. Carlton B. Goodlett Place

City Hall, Room 244
San Francisco, Ca. 94102-4689
(415) 554-5184 - voice | (415) 554-5163 - fax

District 1 Sandra Lee Fewer e.g. or Acting Supervisor
District 2 Mark Farrell e.g. or Acting Supervisor
District 3 Aaron Peskin e.g. or Acting Supervisor
District 4 Katy Tang e.g. or Acting Supervisor
District 5 London Breed e.g. or Acting Supervisor
District 6 Jane Kim e.g. or Acting Supervisor
District 7 Norman Yee e.g. or Acting Supervisor
District 8 Jeff Sheehy e.g. or Acting Supervisor
District 9 Hillary Ronen e.g. or Acting Supervisor
District 10 Malia Cohen e.g. or Acting Supervisor
District 11 Ahsha Safaí e.g. or Acting Supervisor

| | |
|---|---|
| Angela Calvillo<br>Clerk of the Board of Supervisor<br>(415) 554-5184 | • Clerk of the Board of Supervisors<br>• Assessment Appeals Board<br>• Youth Commission<br>• LAFCo<br>• Customer Satisfaction Survey |
| **Deputy Directors** | |
| Alisa Somera<br>Legislative Deputy Director<br>(415) 554-7711<br>alisa.somera@sfgov.org | • Legislative Services<br>• LAFCo |
| Peggy Nevin<br>Operations Deputy Director<br>(415) 554-7722<br>peggy.nevin@sfgov.org | • Operational Support to Board Offices and Divisions<br>• Facilities Management Liaison<br>• Municipal Codes Maintenance<br>• Request for Interpreters |
| Junko Laxamana<br>Administration & Finance<br>(415) 554-7704 | • Budget and Accounting<br>• Employee Relations<br>• Human Resources<br>• Payroll |

| | |
|---|---|
| junko.laxamana@sfgov.org | |
| Wilson Ng<br>Records and Project Manager<br>(415) 554-7725<br>wilson.l.ng@sfgov.org | • IT<br>• Records Management<br>• Data Management<br>• Public Records Requests and Legislative Research<br>• Legislative Projects<br>• ADA Coordinator<br>• Climate Liaison |

| Assistant Clerks | |
|---|---|
| Derek Evans<br>Assistant Clerk<br>(415) 554-7702<br>derek.evans@sfgov.org | • Rules Committee<br>• PUC Revenue Bond Oversight<br>• Application to Serve on Board /Commission<br>• Vacancy Notices |
| Alisa Somera<br>Legislative Deputy Director<br>(415) 554-7711<br>alisa.somera@sfgov.org | • Land Use and Transportation Committee |
| Erica Major<br>Assistant Clerk<br>(415) 554-4441<br>erica.major@sfgov.org | • Government Audit & Oversight Committee<br>• Public Safety & Neighborhood Services Committee |
| Linda Wong<br>Assistant Clerk<br>(415) 554-7719<br>linda.wong@sfgov.org | • Budget and Finance Committee<br>• Budget and Finance Subcommittee<br>• Budget and Finance Federal Select Committee |

| | |
|---|---|
| John Carroll<br>Assistant Clerk<br>(415) 554-4445<br>john.carroll@sfgov.org | |
| Victor Young<br>Assistant Clerk<br>(415) 554-7723<br>victor.young@sfgov.org | • Sunshine Ordinance Task Force (SOTF)<br>  SOTF Administrative Code, Chapter 67 |
| **Support Staff** | |
| Brent Jalipa<br>(415) 554-7712<br>brent.jalipa@sfgov.org<br><br>Lisa Lew<br>(415) 554-7718<br>lisa.lew@sfgov.org | • Conditional Use Appeal<br>• Environmental Impact Report Appeal<br>• Minor Encroachment Permit Appeal<br>• Landmark Appeal<br>• Environmental Exception (CEQA)<br>• Negative Declaration<br>• Tentative Subdivision Maps Appeal<br>• Temporary Use or Occupancy of Public Street Appeal<br>• Temporary Use of Streets for Street Fair<br>• Subsidewalk Encroachment Permits / Building Construction, Rehabilitation, or Maintenance Permits |

Naomi Maria Kelly e.g.  is San Francisco's City Administrator or Acting Administrator

Orange County Sheriff's Department et al.,
550 N. Flower Street,
Santa Ana, CA 92703
(714) 647-4666

**Central Justice Center**
700 Civic Center Drive West Ste. M-100,
Santa Ana, CA 92701
(714) 834-5955

**Communications-Radio/Microwave/Shop**
840 N. Eckhoff St., Suite 104,
Orange, CA 92868-1021
(714) 704-7900

**Community Programs**
550 N. Flower Street,
Santa Ana, CA 92703
(714) 647-4133

**Community Services**
550 N. Flower St.,
Santa Ana, CA 92703
(714) 647-1806

**Coroner Division**
1071 W. Santa Ana Blvd.,
Santa Ana, CA 92703
(714) 647-7400

**Correctional Programs Unit**
13502 Musick Rd.,
Irvine, CA. 92618

**Emergency Communications Bureau/Sheriff's Dispatch**
2644 Santiago Canyon Road,
Silverado, CA 92676
(714) 647-7000

**Field Services (Court)**
909 N. Main Street, Ste. 2,
Santa Ana, CA 92701
(714) 569-3700

**Financial/Administrative Services Division**
320 N. Flower Street, Suite 108,
Santa Ana, CA 92703
(714) 834-6670

**Harbor Justice Center - Newport Beach**
4601 Jamboree Road,
Newport Beach, CA 92660
(949) 476-4820

**Harbor Patrol Division**
1901 Bayside Drive,
Corona Del Mar, CA 92625
(949) 723-1002

**Inmate Services Division**
1530 South St. College.,
Anaheim, CA 92806
(714) 939-4850

**Investigations Division**
550 N. Flower Street,
Santa Ana, CA 92703
(714) 647-7040

**James A. Musick Facility**
13502 Musick,
Irvine, CA 92618
(949) 855-2600

**Lamoreaux Justice Center**
341 The City Drive South,
Orange, CA 92868
(714) 935-6974

**North Justice Center**
1275 N. Berkeley Ave., Room 360,
Fullerton, CA 92832
(714) 773-4520

**North Operations Division**
550 N. Flower Street,
Santa Ana 92703
(714) 647-1851

**OC Crime Lab Division**
320 N. Flower St.,
Santa Ana, CA 92703
(714) 834-4510

**Professional Standards Division (Personnel)**
320 N. Flower Street, 4th floor,
Santa Ana, CA 92703
(714) 834-5100

**Property/Evidence Bureau**
320 N. Flower St.,
Santa Ana, CA 92703
(714) 834-6482

**Public Affairs**
550 N. Flower Street
Santa Ana 92703
(714) 647-7042

**Records and Information Services/Warrants**
320 N. Flower St.,
Santa Ana, CA 92703
(714) 834-6454

**Regional Training Academy**
15991 Armstrong Ave.,
Tustin CA 92782
(714) 566-2700

**Research & Development Office**
431 City Drive South,
Orange, CA 92868
(714) 935-6661

**Southeast Operations Division**
20202 Windrow
Lake Forest, CA 92630
Patrol: (949) 206-6100
Investigations: (949) 206-6100

**Southwest Operations Division**
11 Journey,
Aliso Viejo, CA 92656
Patrol: (949) 425-1800
Investigations: (949) 425-1900

**Support Services Division**
320 N. Flower Street,
Santa Ana, CA 92703
(714) 834-6454

**Theo Lacy Facility**
501 The City Drive South,
Orange, CA 92868
(714) 935-6940

**Training Division**
1900 W. Katella Avenue,
Orange, CA 92867
(714) 538-9668

**West Justice Center**
8141 13th Street,
Westminster, CA 92683
(714) 896-7231


**Sheriff-Coroner**
**Sandra Hutchens e.g. or Acting Sheriff-Coroner**

**Undersheriff**
**Don Barnes e.g. or Acting Undersheriff**

**Executive Director**
**Brian Wayt e.g. or Acting Executive Director**
Administrative Services Command

**Assistant Sheriff**
**Bob Peterson e.g. or Acting Assistant Sheriff**
Custody Operations Command

**Assistant Sheriff**
**Steve Kea e.g. or Acting Assistant Sheriff**
Professional Services Command


Assistant Sheriff
Adam Powell e.g. or Acting Assistant Sheriff
Field Operations &

Investigative Services Command

Constitutional Policing Advisor
Mary Izadi e.g. or Acting Advisor
Constitutional Policing

John or Jane Doe e.g., Chief Deputy of Internal Affairs Division

Senior Director
Robert Beaver e.g. or Acting Administrative Services Representative
Administrative Services

Commander
Jon Briggs e.g. or Acting Commander
Custody Operations Services

Commander
Jeff Hallock e.g. or Acting Commander
Professional Service

Commander
Stu Greenberg e.g. or Acting Commander
Field Operations

Commander
William Baker e.g. or Acting Commander
Investigative Services

Ray Grangoff e.g. Government Relations Representative
Government Relations

Lt. Lane Lagaret e.g. or Acting Lt.
Media Relations

Gail Krause e.g. or Acting Community Relations Representative
Community Relations

Jaimee Blashaw e.g. or Acting Public Relations Representatives
Public Relations

Orange County Board of Supervisors et al., All Active or Acting Members of The Board
Hall of Administration
333 W. Santa Ana Blvd.
Santa Ana, CA 92701

Michelle Steel, Chairwoman e.g.
2nd District
(714) 834-3220

Andrew Do, Vice Chair e.g.
1st District
(714) 834-3110

Todd Spitzer e.g.
3rd District
(714) 834-3330

Shawn Nelson e.g.
4th District
(714) 834-3440

Lisa A. Bartlett e.g.
5th District
(714) 834-3550

Claude Parrish e.g. County of Orange Assessor or Acting Assessor

**Orange County Assessor**

**South County Office**

Civic Center Plaza, Building 11

Mission Viejo City Hall

625 N. Ross Street

200 Civic Center

Santa Ana, CA 92701

Mission Viejo, CA 92691

Eric H. Woolery e.g. County of Orange Auditor-Controller or Acting Auditor-Controller

12 Civic Center Plaza
Room #200 (Second Floor)
P.O. Box 567
Santa Ana, CA 92702
714-834-2450
714-834-2569 (Fax)

Claire Moynihan e.g. or Acting Rep.
Director Central Accounting

Tonya Riley, CPA e.g. or Acting Rep.
Director of Satellite Operations

Phil Daigneau e.g. or Acting Rep.
Director of Information Technology

Toni Smart, CPA e.g. or Acting Rep.
Director of Internal Audit

Alice Sinclair e.g. or Acting Rep.
Administrative and Business Services Manage

Frank Kim e.g. County Executive Officer or Acting Rep.

Mailing address:    Hall of Administration
                    333 W. Santa Ana Blvd.
                    Santa Ana, CA 92701

Main telephone:    (714) 834-2345

Shari L. Freidenrich e.g. Treasurer-Tax Collector or Acting Rep.

**Physical Address:**
The Hall of Finance
625 North Ross St.
Building 11, Room G58
Santa Ana, CA 92702

**Mailing Address:**
County of Orange
Attn: Treasurer-Tax Collector
P.O. Box 1438
Santa Ana, CA 92702-1438

Sacramento County Sheriff's Department et al.,
Scott Jones e.g. Sheriff or Acting Sheriff
**Civil Bureau**
3341 Power Inn Road #313
Sacramento, CA 95826
916.875.2665
916.875.2664 (fax)

John or Jane Doe e.g. Undersheriff or Acting Undersheriff
All Active Chief Deputy Sheriffs in Command e.g., et al.,

John or Jane Doe e.g., Chief Deputy of Internal Affairs Division Sacramento Sheriffs
Department

Sacramento County Board of Supervisors et al., All Active and Acting Members of the Board

700 H Street, Suite 1450
Sacramento, CA 95814

District 1
Phil Serna

District 2
Patrick Kennedy

District 3
Susan Peters
Vice Chair

District 4
Sue Frost

District 5
Don Nottoli
Chair

Nav Gill e.g. Sacramento County Chief Executive Officer
700 H Street, Room 7650
Sacramento, CA 95814
916-874-5833

Darrell Steinberg e.g. Mayor of City of Sacramento or Acting Mayor
Vice Mayor - Rick Jennings, II (District 7)
District 1 - Angelique Ashby
District 2 - Allen Warren
District 3 - Jeff Harris
District 4 - Steve Hansen
District 5 - Jay Schenirer
District 6 - Eric Guerra
District 8 - Larry Carr

CONTACT THE CITY OF SACRAMENTO AUDITOR'S OFFICE

JORGE OSEGUERA
Historic City Hall
915 "I" Street, 2nd Floor, Room 219, Sacramento, CA 95814
Office: (916) 808-7270
Fax: (916) 840-7681
JOseguera@cityofsacramento.org

LYNN BASHAW
Historic City Hall
915 "I" Street, 2nd Floor, Room 219, Sacramento, CA 95814
Office: (916) 808-7278
Fax: (916) 840-7681
LBashaw@cityofsacramento.org

FARISHTA AHRARY
Historic City Hall
915 "I" Street, 2nd Floor, Room 219, Sacramento, CA 95814
Office: (916) 808-7266
Fax: (916) 840-7681
FAhrary@cityofsacramento.org

CHAU CAO
Historic City Hall
915 "I" Street, 2nd Floor, Room 219, Sacramento, CA 95814
Office: (916) 808-7282
Fax: (916) 840-7681
CCao@cityofsacramento.org

JORDAN SWEENEY
Historic City Hall
915 "I" Street, 2nd Floor, Room 219, Sacramento, CA 95814
Office: (916) 808-2310
Fax: (916) 840-7681
JPSweeney@cityofsacramento.org

SEAN ARNOLD
Historic City Hall
915 "I" Street, 2nd Floor, Room 219, Sacramento, CA 95814
Office: (916) 808-5341
Fax: (916) 840-7681
SArnold@cityofsacramento.org


Los Angeles County Sheriff's Department et al.,
SHERIFF, JIM McDONNELL e.g. or Acting Sheriff
UNDERSHERIFF Jacques A. La Berge e.g. or Acting Undersheriff
Assistant Sheriff ,Jill Serrano e.g. Chief Financial and Administrative Officer or Acting CFAO
Assistant Sheriff Eddie Rivero e.g.  Countywide Operations or Acting CO

Assistant Sheriff - Bobby Denham e.g.  Patrol Operations or Acting PO
Legislative Unit Federal Representative - Lt. Bilowit e.g. State Representative Sgt. Epp e.g.
Or Acting LUFP Unit Reps.
Assistant Sheriff - Kelly Harrington e.g.  Custody Operation or Acting CO
Legal Advisory Unit Chief Legal Advisor - Elizabeth Miller e.g. or Acting LACUCLA
Constitutional Policing Advisors - Diana Teran e.g. ,Mark Smith e.g. or Acting CPA's
Community Outreach Director - Gymeka Williams e.g. or acting COD
Strategic Communications Director - Carol Lin e.g. or Acting SCD
Audit and Accountability Bureau -  Capt. Gross e.g. or Acting AAB
Sheriff's Information Bureau - Capt. Harris e.g. or Acting SIB
Professional Standards and Training Division Chief K. Mannis e.g. or Acting
Cmdr. Ault Cmdr – Mauldin e.g. or Acting

Court Services Division Chief - M. Gutierrez e.g., Cmdr. Castellano e.g., Cmdr. Goran e.g. or
Acting Court Sevices Division Commanders et al.,

Civil Management Bureau - Capt. Nee e.g. or Acting
Court Services Central - Capt. Del Mese e.g. or Acting
Court Services East - Capt. Miranda e.g. or Acting
Court Services West - Capt. Thornton e.g. or Acting
Court Services Transportation Bureau - Capt. Reed e.g. or Acting

Mail Address:
Los Angeles County Sheriff's Department
Hall of Justice
211 West Temple Street
Los Angeles, CA 90012
213.229.1700

Los Angeles County Sheriffs Department Court Services Division et al.,
110 N. GRAND AVE RM 525
LOS ANGELES, CA 90012
(213)-972-3930

Los Angeles County Sheriffs Department Court Services Division et al.,
LOS ANGELES BRANCH
111 N. HILL STREET 6th Floor Room # 437
LOS ANGELES, CA 90012

Los Angeles County Sheriffs Department Court Services Division et al.,
LOS ANGELES BRANCH
110 N. GRAND AVE., Fifth Floor Room # 525
LOS ANGELES, CA 90012


City of Los Angeles et al.,
**Sachi A. Hamai**
Chief Executive Officer
Kenneth Hahn Hall of Administration
500 W. Temple St. Room 358
Los Angeles, CA 90012

Ron Galperin e.g. Los Angeles City Controller or Acting
**Office of the Controller**
200 N. Main Street, Suite 300
Los Angeles, CA 90012
213.978.7200, phone
213.978.7211, fax
controller.galperin@lacity.org



Eric Garcetti e.g. –Mayor of Los Angeles or Acting Mayor
200 S. Spring Street
Los Angeles, CA 90012
(213) 978-0600

City of Los Angeles Council et al.,
200 N. Spring Street
Los Angeles, CA 90012
(213) 473-3231


1       Gilbert Cedillo
2       Paul Krekorian
3       Bob Blumenfield
4       David E. Ryu
5       Paul Koretz
6       Nury Martinez
7       Monica Rodriguez
8       Marqueece Harris-Dawson
9       Curren D. Price, Jr.
10      Herb J. Wesson, Jr.
11      Mike Bonin

12     Mitchell Englander
13     Mitch O'Farrell
14     Jose Huizar
15     Joe Buscaino

Los Angeles City Attorney's Office et al.,
Mike Feuer e.g. or Acting City Attorney
Executive Team
Leela Ann Kapur e.g. Chief of Staff
Jim Clark e.g. Chief Deputy
Mary Clare Molidor e.g. Chief Assistant City Attorney
David Michaelson e.g. Chief Assistant City Attorney
Thom Peters e.g. Civil Litigation Chief
Capri Maddox e.g. Special Assistant
Alexander Ponder e.g. Policy & Inter-Governmental Relations
Rob Wilcox e.g. Director of Community Engagement and Outreach
Nicole Carcel e.g., Neighborhood Relations & External Affairs

Office of the Los Angeles City Attorney
James K. Hahn City Hall East
200 North Main Street, 8th Floor
Los Angeles, CA. 90012
213-978-8100
mike.n.feuer@lacity.org

Office of the Los Angeles City Attorney
6262 Van Nuys Boulevard
Van Nuys, CA. 91401
818-374-3300

California State Controller et al., Betty T. Yee e.g. or Acting California State Controller
Legal Office
State Controller's Office
300 Capitol Mall, Suite 1850
Sacramento, California 95814

Executive Offices
Sacramento
300 Capitol Mall, Suite 1850
Sacramento, California 95814
Phone (916) 445-2636
Fax (916) 322-4404

Los Angeles
888 South Figueroa Street, Suite 2050
Los Angeles, CA 90017
Phone (213) 833-6010
Fax (213) 833-6011

Division of Accounting and Reporting
3301 C Street, Suite 700
Sacramento, California 95816
Phone (916) 323-3258
Fax (916) 323-4807

Administration and Disbursements Division
P.O. Box 942850
Sacramento, California 94250-5872
Phone (916) 323-8314
Fax (916) 327-0597

Disbursements
Phone (916) 445-7789
Fax (916) 445-5759

Audits Division
Claim Audits Sacramento
3301 C Street, Suite 705
Sacramento, California 95816
Phone (916) 445-3060
Fax (916) 327-4694

Field Audits Sacramento
P.O. Box 942850
Sacramento, California 94250-5874
Phone (916) 324-8907
Fax (916) 327-0832

Field Audits Los Angeles
901 Corporate Center Drive, Suite 200
Monterey Park, California 91754-7619
Phone (323) 981-6802
Fax (323) 981-6811

Information Systems Division
300 Capitol Mall, Suite 634

Sacramento, California 95814
Phone (916) 322-3030
Fax (916) 323-4969

Personnel/Payroll Services Division
300 Capitol Mall, 10th Floor
Sacramento, California 95814
Phone (916) 445-5361
Fax (916) 322-6493

Unclaimed Property Division
10600 White Rock Road, Suite 141
Rancho Cordova, California 95670
Phone (916) 464-0641
Fax (916) 464-6222

California State Treasurer et al.,- John Chiang e.g. or Acting California State Treasurer
Mark Stivers e.g. Executive Director or Acting Executive Director

California Tax Credit Allocation Committee
915 Capitol Mall, Suite 485
Sacramento, CA 95814
(916) 654-6340
Fax: (916) 654-6033

Anthony Zeto, Deputy Director        (916) 654-6340

Development Staff:
Gina Ferguson, Chief, Development Section (916) 654-6340
Connie Harina, Development Program Manager      (916) 654-6340
Zhuo "Jewel" Chen    (916) 651-7708
Carmen Doonan        (916) 651-0904
Marlene McDonough (916) 654-0015
Alex Ninh       (916) 653-1755
Jack Waegell  (916) 653-4456
Marisol Parks, Development Program Manager        (916) 654-6340
Elaine Johnson          (916) 653-4186
Mayra Lozano (916) 653-0173
Diane SooHoo(916) 654-5882
Lucy Vang      (916) 653-1754
Compliance Staff

Rose Guerrero, Chief, Compliance Section   (916) 654-6340

Ammer Singh, Compliance Program Manager      (916) 654-6340
Shannon Nardinelli, Compliance Program Manager (916) 654-6340
Elizabeth Gutierrez, Compliance Program Manager (916) 654-6340
Biu Wong, Compliance Program Manager    (916) 654-6340
Angel Barragan        (916) 654-5742
Stephen Bellotti       (916) 651-0409
Phyllis Blanton        (916) 654-0013
Richard Chinakwe     (916) 651-0239
Emilio Contreras       (916) 654-6340
Generoso Deguzman  (916) 651-3883
Justin Espanol (916) 651-1342
Frank Harper  (916) 651-3812
Diana Hester  (916) 654-6340
Noemy Iniguez          (916) 651-0808
Tina Johnson  (916) 654-6340
Quang Le       (916) 651-3882
Giovanni Martinez     (916) 653-4886
Pheng Moua   (916) 654-6402
Juan Diego Ochoa    (916) 651-1321
Gurpreet "Preet" Ratia        (916) 651-3814
Jahan Tahaei  (916) 651-1303
Kole Tefft      (916) 653-3858
Julio Villanueva        (916) 653-4277
Support Staff

Tiffani Armstrong     (916) 653-4367
Janice Corbin  (916) 654-6340
Michelle Fadenipo     (916) 654-6340

& All Related Defendants

# "COMPLAINT"

## (Defendant's)

The Defendants are guilty of the following United States Codes:

1.)     18 U.S.C. § Section 1001

2.)     18 U.S.C. § 371 (Conspiracy)

3.)     18 U.S.C. § 1030 (a) (Misuse of Computer)

4.)     18 U.S.C. § 402 (Contempt's Constituting Crimes)

5.) 18 U.S.C. § 1344 (1) (2) (Bank Fraud)

6.) Violation of the U.S. Constitution Due Process Clause of the Fourteenth Amendment

7.) Espionage

8.) Conspiracy to Commit Espionage

9.) 26 U.S. Code § 7202

10.) Violation of **42 U.S. Code § 16915- Direction to the Attorney General (a)(e)(i)(ii)(iii)(B)(2)(3)**

### Requirements
A criminal history check under subsection (a) shall, except in cases approved for good cause by the Corporation, include--
a name-based search of the National Sex Offender Registry established under the Adam Walsh Child Protection and Safety Act of 2006 (42 U.S.C. 16901 et seq.); and
a search of the State criminal registry or repository in the State in which the program is operating and the State in which the individual resides at the time of application; or
submitting fingerprints to the Federal Bureau of Investigation for a national criminal history background check.

**Citations:**
*Miller v. California*, 413 U.S. 15
*New York v. Ferber*, 458 U.S. 747
United States v. Williams (2008), 553 U.S. 285 (2008)

**Gregg v. Georgia, Proffitt v. Florida, Jurek v. Texas, Woodson v. North Carolina, and Roberts v. Louisiana,** 428 U.S. 153 (1976), reaffirmed the United States Supreme Court's acceptance of the use of the death penalty in the United States,

11.) **42 U.S.C. § 1983**, popularly known as "Section **1983**," is a federal law that allows lawsuits for violations of constitutional rights

**12.) The Defendants are guilty of the following United States Codes CRIMINAL RICO:**
**18 U.S.C. §§ 1961-1968**
18 U.S. Code § 1961 - Definitions
section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud)
(a)
(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
(A)
(i) with the intent to promote the carrying on of specified unlawful activity; or
(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

**C. Person**
Section 1961(3) provides that the definition of "person" "includes any individual or entity capable of holding a legal or beneficial interest in property." This definition is highly significant because it

determines who may be a defendant subject to criminal charges or a civil suit under RICO, as well as who may bring a civil RICO suit for treble damages. Clearly, a natural person sec. 52 53 falls within the definition of "person" under section 1961(3). See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-63 (2001). Likewise, RICO's definition of "person" includes a corporation, union, partnership and a sole proprietorship.

In that regard, 18 U.S.C. § 1962 makes it unlawful, for both criminal and civil purposes, for "any person" to violate Section 1962.

In that regard, 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962" may sue for treble damages (emphasis added)

## 18 U.S. Code § 1963 - Criminal penalties

(a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law—

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962;and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

## 18 U.S.C. § 1961(4).

The Supreme Court has squarely held that the term "enterprise" encompasses both legitimate and illegitimate enterprises.

Prosecution under RICO, however, does not require proof that either the defendant or the enterprise was connected to organized crime.

1. RICO's Definition of Enterprise Broadly Encompasses Many Types of Enterprises
Courts have given a broad reading to the term "enterprise." Noting that Congress mandated a liberal construction of the RICO statute in order to effectuate its remedial purposes and pointing to the expansive use of the word "includes" in the statutory definition of the term, courts have held that the list of enumerated entities in Section 1961(4) is not exhaustive but merely illustrative. Thus, the term enterprise includes commercial entities such as corporations (both foreign and domestic), partnerships, sole proprietorships, and cooperatives; benevolent and non-profit 65 66 67 68organizations such as unions and union benefit funds, schools, and political associations. The term enterprise also includes governmental units such as the offices of governors, mayors, state and congressional legislators, courts and judicial offices, police departments and sheriffs' offices, county prosecutors' offices, tax bureaus, fire departments, and executive departments and agencies, as well as municipalities. Indeed, in United States v. Warner, 498 F.3d 78 79 666, 694-97 (7th Cir. 2007), the Seventh Circuit held that the State of Illinois was properly charged as the RICO enterprise that was the victim of corrupt office holders' pattern of racketeering activity. Establishing that the members of the enterprise operated together in a coordinated manner in furtherance of a common purpose may be proven by a wide variety of direct and circumstantial evidence including, but not limited to, inferences from the members' commission of similar

racketeering acts in furtherance of a shared objective, financial ties, coordination of activities, community of interests and objectives, interlocking nature of the schemes, and overlapping nature of the wrongful conduct. Moreover, such evidence of the existence of the charged enterprise may be based on uncharged unlawful conduct. The First, Second, Ninth, Eleventh, and District of Columbia Circuits have rejected the more rigid Bledsoe/Riccobene approach, holding instead that an enterprise need not have an ascertainable structure distinct from the pattern of racketeering activity, and that the existence of an enterprise should be evaluated on the totality of the evidence under the principles of Turkette and may be inferred from the evidence establishing the pattern of racketeering activity.

## An Individual May Constitute a RICO Enterprise

RICO's definition of "enterprise" explicitly "includes any individual." 18 U.S.C. § 1961(4).Indeed, in Salinas v. United States, 522 U.S. 52, 65 (1997), the Supreme Court indicated in dictum that a sole individual could also be a RICO enterprise, stating "though an 'enterprise' under § 1962(c) can exist with only one actor to conduct it, in most instances it will be conducted by more than one person or entity . . . ." Therefore, an individual may be a RICO enterprise, provided that the individual is not both a RICO defendant and the alleged RICO enterprise ,See United States v. DiCaro, 772 F.2d 1314, 1319-20 (7th Cir. 1985) For example, suppose individuals A and B hired individual C, who operated as a professional "hitman" over a period of time, to murder several persons. In these circumstances, individual C could be the RICO enterprise and individuals A and B could be charged as the RICO defendants. However, as a practical matter it is unnecessary to charge an individual as the RICO enterprise, because in such circumstances the Government could charge A, B, and C as an association-in-fact enterprise.

1. Continuity and Relationship - - Sedima, S.P.R.L. and H.J. Inc. v. Northwestern

Bell Tel. Co.In Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), the Supreme Court stated that the RICO pattern element required more than merely proving two predicate acts of racketeering. The Court pointed to RICO legislative history indicating that the RICO pattern was not designed to cover merely sporadic or isolated unlawful activity, but rather was intended to cover racketeering activity that demonstrated some "relationship" and "the **threat of continuing [unlawful] activity."** Id. at 496n.14. Accordingly, the Supreme Court ruled that proof of such "continuity plus relationship" was required to establish a RICO pattern in addition to proof of two acts of racketeering.

The Supreme Court held that RICO does not require proof of multiple schemes, stating, in part: We find no support [for the Eighth Circuit's position] . . . that predicate acts of racketeering may form a pattern only when they are part of separate illegal schemes. Supreme Court stated:A "pattern" is an "arrangement or order of things or activity," . . . . It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them "ordered" or arranged."[C}riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." To Constitute a Pattern, it is Not Necessary that the Alleged Racketeering Acts Be Similar or Related Directly to Each Other, Rather A Pattern May Consist of Diversified Racketeering Acts Provided that they are Related to the Alleged Enterprise.

In accordance with the foregoing evidence of Congress' intent underlying RICO, every court of appeals that has decided the issue has held that racketeering acts need not be similar, or directly related to each other; rather, it is sufficient that the racketeering acts are related in some way to the affairs of the charged enterprise As the Third Circuit explained in United States v. Eufrasio, 935 F.2d 553 (3d Cir. 1991).

Nevertheless, courts have repeatedly found that the requisite continuity was established where a scheme to defraud involved more than one victim and multiple mailings or wire transmissions spanned a substantial period of time, or the scheme posed a threat of continuing unlawful activity.

Likewise, pursuant to H.J. Inc.'s fourth illustration, courts have found that the requisite continuity was established where the racketeering acts were "a regular way of conducting defendant's ongoing legitimate business." H.J. Inc., 492 U.S. at 243.

Moreover, a single RICO count may include both alternative grounds for liability, i.e., a pattern of

racketeering activity and collection of unlawful debt, or each alternative ground may be the basis for a separate RICO count.

Another issue that arises in connection with Section 1962(a) prosecutions involves the tracing of investment money. Although a defendant may argue that the Government must trace to the enterprise any monies charged as being invested in violation of Section 1962(a), rigorous tracing is not required.

For example, in United States v. Marino, 277 F.3d 11 (1st Cir. 2002), the court upheld a jury instruction that a person is associated with an association-in-fact enterprise if he knowingly participates, directly or indirectly, in the conduct of the affairs of an enterprise. One need not have an official position in the enterprise to be associated with it. One need not formally align himself with an enterprise to associate with it. Association may be by means of an informal or loose relationship. To associate has its plain meaning . . . . "Associated" means to be joined, often in a loose relationship, as a partner, fellow worker, colleague, friend, companion, or ally. Thus, although a person's role in the enterprise may be very minor, a person will still be associated with the enterprise if he knowingly joins with a group of individuals associated in fact who constitute the enterprise.

## Profit-Seeking Motive Is Not Required

In Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994) ("Scheidler"), the Supreme Court held that the RICO statute contains no economic motive requirement, thereby overruling the district court's holding that a profit-seeking motive for either the RICO enterprise or predicate acts was required, and reversing the district court's dismissal of the plaintiff's civil RICO claim. In reaching this decision, the Supreme Court observed that the enterprise in Sections 1962(a) and (b) might "very well be a profit-seeking entity," id. at 259, but that the RICO statute does not mandate that either the enterprise or the racketeering activity have an economic motive. Rather, RICO requires only that the entity be acquired through the use of illegal activity or by money obtained from illegal activities.

To Constitute a Pattern, it is Not Necessary that the Alleged Racketeering Acts be Similar or Related Directly to Each Other, Rather A Pattern May Consist of Diversified Racketeering Acts Provided that they are Related to the Alleged Enterprise. Nevertheless, courts have repeatedly found that the requisite continuity was established where a scheme to defraud involved more than one victim and multiple mailings or wire transmissions spanned a substantial period of time, or the scheme posed a threat of continuing unlawful activity.

Likewise, pursuant to H.J. Inc.'s fourth illustration, courts have found that the requisite continuity was established where the racketeering acts were "a regular way of conducting defendant's ongoing legitimate business." H.J. Inc., 492 U.S. at 243.136 Moreover, the requisite continuity may be proven by facts external to a defendant's own

racketeering acts, such as the nature of the enterprise and racketeering activities by other members or associates of the enterprise, including evidence of uncharged crimes.

## 6. Single Episode Rule

In response to case law and concerns that continuity may be deficient arising from the potential use of a single, isolated transaction to establish a defendant's pattern of racketeering activity, the Organized Crime and Racketeering Section developed a policy referred to as the "single episode rule." Although the courts have not mandated a single-episode rule (see pp. 94-95 above), OCRS will continue to implement its single episode policy, to ensure that the requisite continuity is satisfied.

## a. Single Episode Rule

The single episode rule is as follows:

When a single act or course of conduct may be charged as multiple offenses or counts under the law governing those particular offenses, it will be presumed that multiple racketeering acts may be charged corresponding to those multiple offenses.Thus, the single episode rule creates a presumption in favor of charging multiple predicate acts when the law permits charging multiple offenses or multiple counts for a given act or course of conduct.

## F. Unlawful Debt

1. Collection of Unlawful Debt Provides an Alternative Ground for RICO Liability.

Participating in the affairs of an enterprise through the "collection of unlawful debt" is an alternative ground for imposing liability under 18 U.S.C. §§ 1962(c) and (d). Likewise, acquiring or maintaining an interest in an enterprise through the "collection of an unlawful debt" is an alternative ground for imposing liability under

18 U.S.C. §§ 1962(a) and (b). In such cases, the Government's is not required to establish that a defendant engaged, or conspired to engage, in a pattern of racketeering activity since the alternative ground of "collection of unlawful debt" is sufficient to establish liability under 18 U.S.C. § 1962(a), (b), (c), or (d).

Moreover, a single RICO count may include both alternative grounds for liability, i.e., a pattern of racketeering activity and collection of unlawful debt, or each alternative ground may be the basis for a separate RICO count.

Moreover, in Salinas v. United States, 522 U.S. 52, 61-66 (1997), the Supreme Court held that to establish a RICO conspiracy offense under Section 1962(d), there is no requirement that the defendant "himself committed or agreed to commit the two predicate acts requisite for a substantive RICO offense under § 1962(c)." Id. at 61. The Supreme Court explained: A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

"If the government can prove an agreement on an overall objective, it need not prove a defendant personally agreed to commit two predicate acts." United States v. Abbell, 271 F.3d 1286, 1299 (11th Cir. 2001), cert. denied, 537 U.S. 813 (2002); accord Smith, 413 F.3d at 1272; Delgado, 401 F.3d at 296; To, 144 F.3d at 744; Starrett, 55 F.3d at 1544.

In Salinas, 522 U.S. at 63-66, the Supreme Court made clear that while evidence of such an agreement to commit two racketeering acts is sufficient to establish a RICO conspiracy, RICO does not require the plaintiff to prove that the defendant agreed to personally commit two predicate acts of racketeering. It bears repeating (see Section III(D)(1) above), that the Supreme Court explained a second alternative way to prove a RICO conspiracy, stating:

A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 253-254 (1940).

Moreover, "[r]egardless of the method used to prove the agreement, the government does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive RICO crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy. That each conspirator may have contemplated participating in different and unrelated crimes is irrelevant." Starrett, 55 F.3d at 1544 (internal quotation marks and citations deleted). Rather, to establish sufficient knowledge, it is only required that the defendant" know the general nature of the conspiracy and that the conspiracy extends beyond his individual role." Rastelli, 870 F.2d at 828 (collecting cases). Furthermore, "[b]ecause conspirators normally attempt to conceal their conduct, the elements of a conspiracy offense may be established solely by circumstantial evidence. The agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the development and collocation of circumstances." Posada-Rios, 158 F.3d at 857 (citations and internal quotation marks omitted).Accord cases cited in notes 189 & 192 above.

Moreover, it is well-established that proof of a conspiracy is not defeated merely because membership in the conspiracy changes and some defendants cease to participate in it. In addition, each co-conspirator is liable for the acts of all other co-conspirators undertaken in furtherance of the conspiracy both prior to and subsequent to the co-conspirator's joining the conspiracy even if the conspirator did not participate in, or was unaware of, such acts. Moreover, such liability remains even if the defendant has ceased his participation in the conspiracy.

In Salinas, the Supreme Court squarely applied this principle to RICO cases. As explained in Sections III

(D)(1) and (2) above, in Salinas, the Supreme Court held that even though a defendant may not be liable for a substantive RICO violation under 18 U.S.C. § 1962(c) unless he himself committed at least two racketeering acts, a defendant, nevertheless, may be liable for a RICO conspiracy offense even if he did not himself commit or agree to commit at least two racketeering acts. Id. at 61-65. In reaching this conclusion, the Supreme Court relied upon two well-established tenets of conspiracy law which also govern Section 1962(d). The Supreme Court first observed that" a person may conspire for the commission of a crime by a third person." Id. at 64, quoting United States v. Holte, 236 U.S. 140, 144 (1915). The Salinas Court also recognized that "[a] person . . .may be liable for conspiracy even though he was incapable of committing the substantive offense. "Id. at 64, citing United States v. Rabinowich, 238 U.S. 78, 86 (1915); see also cases cited in196 above.

Under RICO, Defendants Are Jointly and Severally Liable for the Total Amount of Forfeiture Declared Every court that has considered the issue has held that each defendant convicted on a RICO charge is jointly and severally liable for the entire amount of forfeiture that was reasonably foreseeable to the defendant. As the Eighth Circuit stated in United States v. Simmons, 154 F.3d. See, e.g., United States v. Gotti, 459 F.3d 296, 347 (2d Cir. 2006) (following Fruchter 249[below]; in a RICO case, each co-defendant is liable for the full amount of the proceeds of the racketeering activity foreseeable to him); United States v. Hively, 437 F.3d 752, 763 (8th Cir. 2006) (RICO defendant is liable for the proceeds of the entire scheme, not just the proceeds of the two (continued...)

200 Santos 128 S. Ct. 2026 (internal citations omitted). However valid this observation might be with regard to money laundering, the merger doctrine has no place in RICO practice because of the wholly different statutory scheme established by 18 U.S.C. § 1962: there can be no merger of the predicate acts of racketeering and the racketeering offense itself. See Section VI (P)(1)(a) and (b) below.

Thus, the forfeiture of gross proceeds under RICO does not raise the specter of imposing greater punishment for related offenses that are subject to the merger doctrine. Furthermore, as stated above, forfeiture of all of the defendant's receipts derived from his unlawful activity is consistent with the longstanding rule of law that a wrongdoer can never acquire a legitimate interest in his unlawful gains. For all of these reasons, OCRS maintains that gross proceeds are subject to forfeiture under Section 1963(a), and, therefore, prosecutors should continue to seek the forfeiture of gross proceed sunder § 1963(a)(3). Challenges to the forfeiture of gross proceeds under RICO that cite Santos 248 should be contested and distinguished on the bases set out above. b. Under RICO, Defendants Are Jointly and Severally Liable for the Total Amount of Forfeiture Declared Every court that has considered the issue has held that each defendant convicted on a RICO charge is jointly and severally liable for the entire amount of forfeiture that was reasonably foreseeable to the defendant. As the Eighth Circuit stated in United States v. Simmons, 154 F.3d 249(...continued) 249predicate acts on which he was convicted); United States v. Fruchter, 411 F.3d 377, 384 (2d Cir.2005) (RICO defendant is liable for forfeiture of all proceeds of the offense foreseeable to him including proceeds traceable to conduct committed by others and on which he was personally acquitted); Edwards, 303 F.3d at 643 (following Corrado II [below]; defendant, who was not personally involved in one part of the racketeering activity, is jointly and severally liable for money judgment that included the proceeds of that part of the offense because codefendant's commission of it was foreseeable to him); United States v. Corrado, 227 F.3d 543, 554-55 (6th Cir. 2000) (Corrado I) (all defendants in a RICO case are jointly and severally liable for the total amount derived from the scheme; the Government is not required to show that the defendants shared the proceeds of the offense among themselves, nor to establish how much was distributed to a particular defendant); United States v. Corrado, 286 F.3d 934, 938 (6th Cir. 2002) (Corrado II) because a person who collected the proceeds was able to do so because of his participation in a scheme, all members of the scheme are jointly and severally liable). Accord United States v. Infelise, 159 F.3d 300, 301 (7th Cir. 1998); United States v. 250Hurley, 63 F.3d 1, 22 (1st Cir. 1998); United States v. Saccoccia, 58 F.3d 754, 785 (1st Cir. 1995);United States v. Masters, 924 F.2d 1362, 1369-70 (7th Cir.), cert. denied, 500 U.S. 919 (1991); Fleischhauer v. Feltner, 879 F.2d 1290, 1301 (6th Cir. 1989), cert. denied, 493 U.S. 1074 (1990);United States v. Benevento, 836 F.2d 129, 130 (2d Cir.), cert. denied, 486 U.S. 1043 (1988); UnitedStates v. Caporale, 806 F.2d 1487, 1506-09 (11th Cir. 1986), cert. denied, 482 U.S. 917 (1987); United States v. Bloom, 777 F. Supp. 208, 211 (E.D.N.Y. 1991); United States v. Wilson, 742 F. Supp. 905, 909 (E.D. Pa. 1989), aff'd, 909 F. 2d 1478 (3d Cir.), cert. denied, 498 U.S. 1016 (1990).See United States v. Kramer, 73 F.3d 1067, 1076 (11th Cir.), cert. denied, 519 U.S. 1011 251(1996).201765, 769-70 (8th Cir. 1998) (internal citations omitted):Codefendants are properly held jointly and severally liable for the [forfeiture of] proceeds of a RICO enterprise. The government is not required to prove the specific portion of proceeds

for which each defendant is responsible. Such a requirement would allow defendants" to mask the allocation of the proceeds to avoid forfeiting them altogether.

(RICO defendant is liable for forfeiture of all proceeds of the offense foreseeable to him including proceeds traceable to conduct committed by others and on which he was personally acquitted ); Edwards, 303 F.3d at 643 (following Corrado II [below]; defendant, who was not personally involved in one part of the racketeering activity, is jointly and severally liable for money judgment that included the proceeds of that part of the offense because codefendant's commission of it was foreseeable to him); United States v. Corrado, 227 F.3d 543, 554-55 (6th Cir. 2000)(Corrado I) (all defendants in a RICO case are jointly and severally liable for the total amount derived from the scheme; the Government is not required to show that the defendants shared the proceeds of the offense among themselves, nor to establish how much was distributed to a particular defendant); United States v. Corrado, 286 F.3d 934, 938 (6th Cir. 2002) (Corrado II) because a person who collected the proceeds was able to do so because of his participation in a scheme, all members of the scheme are jointly and severally liable).

## Substitute Assets

Section 1963(m), in pertinent part, provides that[i]f any property [subject to forfeiture], as a result of any act or omission of the defendant –

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which

cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property [subject to forfeiture].

This provision, known as the "substitute assets" provision per its companion section in 21 U.S.C. § 853(p), permits the forfeiture of a defendant's otherwise untainted assets when he has dissipated or otherwise disposed of directly forfeitable property of any kind.

In RICO cases, courts have not hesitated to impose substantial forfeitures over Eighth Amendment objections. Such cases are consistent both with RICO's statutory scheme and 342Congress' clear intent that RICO forfeitures be applied broadly.

## 11. Ancillary Claims Proceedings

Section 1963(l) (which is lower case "L" of this provision) establishes the post-conviction procedures known as the "ancillary claims process," under which third parties may assert claims to forfeited property. Rule 32.2, Fed. R. Crim. P. augments § 1963(l) regarding these processes. While the complexities of ancillary claims litigation is beyond the scope of this Manual, the general procedures are summarized as follows.

See, e.g., Segal, 495 F.3d 826, 840 (7th Cir. 2007) (forfeiture of defendant's entire interest in the RICO enterprise, including portion untainted by the criminal activity, was not excessive in light of the massive, long-running scheme involving millions of dollars); United States v. Najjar, 300 F.3d 466, 486 (4th Cir. 2002).

In order to prevail, the petitioner, who has the burden of proof, must establish by a preponderance of the evidence either: (1) that he had a legal right, title, or an interest in the property superior to the defendant's interest at the time of the acts giving rise to the forfeiture.

In Reves v. Ernst & Young, 507 U.S. 170, 183 (1993), the Supreme Court ruled that the liberal construction provision "is not an invitation to apply RICO to new purposes that Congress never intended." The Court reasoned that the clause "only serves as an aid for resolving an ambiguity; it is not to be used to beget one." Id. at 184. (citations omitted). 406 With these limitations in mind, prosecutors can use the liberal construction clause to argue for favorable interpretations of RICO

provisions in order to achieve RICO's remedial purpose. See cases cited in n.405 above.

D. RICO Does Not Require Any Connection to Organized Crime
In 1989, the Supreme Court squarely held that RICO does not require any proof that a RICO defendant or a RICO offense had any nexus to "organized crime." See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 243-49 (1989). Thus, the Supreme Court stated that "the argument for reading an organized crime limitation into RICO . . . . finds no support in the Act's text, and is at odds with the tenor of its legislative history." Id. at 244. The Supreme Court added that "[t]he occasion for Congress' action was the perceived need to combat organized crime. But Congress for cogent reasons chose to enact a more general statute, one which, although it had organized crime as its focus, was not limited in application to organized crime." Id. at 248. Accord Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 260 (1994). Accordingly, the lower courts have uniformly held that RICO does not require any nexus to organized crime.

18 U.S.C. § 1961(1)(B) provides that "any act which is indictable under any of the [listed] provisions of Title 18" may constitute a RICO predicate act of racketeering, including the following offenses that apply extraterritorially:

18 U.S.C. § 1343 relating to wire fraud involving a "wire, radio, or television communication in interstate or foreign commerce." See, e.g., Collazos v. United States, 368 F.3d 190, 200 (2d Cir. 2004); Kim, 246 F.3d at 190-91.

**18 U.S.C. § 1512 relating to tampering with a witness, victim or an informant.**

Moreover, in civil RICO cases involving fraud brought by private litigants, courts have employed two tests adapted from antitrust and securities violations cases. Under the "conduct" test, courts have applied civil RICO extraterritorially where the plaintiff demonstrates: **"(1) that 'conduct material to the completion of the fraud occurred in the United States,' and that (2) the U.S. conduct was the 'direct cause of the alleged injury'" to the plaintiff. Norex Petroleum Ltd. v. Access Indus., Inc.,** 2007 WL 2766731 at \*4 (S.D.N.Y. Sept. 24, 2007). Under the effects test, civil RICO applies extraterritorially "whenever a predominantly foreign transaction has substantial effects within the United States" or "when extraterritorial conduct is intended to and actually does have a detrimental effect" upon the United States plaintiff's business or property.

## Constitutional Challenges to RICO

1. Vagueness Challenges
   In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989), the Supreme Court reversed the Eighth Circuit's holding that required proof of multiple schemes in order to establish the pattern-of-racketeering element of RICO. In a concurring opinion written by Justice Scalia, four Justices expressed their concern about the difficulty in defining a pattern of racketeering activity. stating: No constitutional challenge to this law has been raised in the present case, and so that issue is not before us. That the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented. 492 U.S. at 255-56 (Scalia, J., concurring).

   This comment has prompted numerous defendants to attack the RICO statute on vagueness grounds. Those attacks have not fared well in the courts. All ten of the federal courts of appeals that have addressed the issue since H.J. Inc. was decided have rejected the RICO vagueness argument. These courts have held that vagueness claims must be considered on the facts of the particular case in which the claim is asserted; in each case the court found that the defendants had adequate notice that their conduct fell within the proscriptions of RICO and that consequently their vagueness challenges, including to RICO's requirements of an enterprise and pattern of racketeering activity, were meritless.

   The Court has held that RICO both protects a legitimate "enterprise" from those who would use

unlawful acts to victimize it, United States v. Turkette, 452 U.S. 576, 591(1981), and also protects the public from those who would unlawfully use an"enterprise" (whether legitimate or illegitimate) as a "vehicle" through which

"unlawful . . . activity is committed," National Organization for Women, Inc., 510 U.S. [249,] 259 (1994).

Moreover, some courts have indicated that an enterprise may not be the victim of the alleged racketeering activity where it would violate the rule against identity between the RICO defendant and the enterprise (see Section II(D)(7) above), such as where a corporate defendant would be held vicariously liable for the racketeering activity of its employees that victimize the corporate enterprise. See, e.g., Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386, 1403-06 (11th Cir. 1994); Liguid Air Corp. v. Rogers, 834 F.2d 1297, 1306 (7th Cir. 1987), cert. denied, 492 U.S. 917 (1989); Haroco v. Am. Nat'l B&T Co. of Chicago, 747 F.2d 384, 401-02 (7th Cir. 1984), aff'd on other grounds, 473 U.S. 606 (1985); Weaver v. Mobile Diagnostech, Inc., 2007 WL 1830712, at **10-11 (W.D. Pa. June 25, 2007); Moses v. Martin, 360 F. Supp. 2d 533, 551 (S.D.N.Y. 2004); Manhattan Telecommunications Corp. v. Dial America Marketing, 156 F. Supp. 2d 376, 382-83 (S.D.N.Y. 2001); Thomas v. Ross, 9 F. Supp. 2d 547, 556-57, n.3 (D. Md. 1998).These cases recognize that their rationale does not apply where the RICO defendant is distinct from the enterprise.

As noted above, RICO's definition of an "enterprise," 18 U.S.C. § 1961(4), includes a "corporation," "labor union" and **"other legal entity."** RICO's legislative history firmly establishes that Congress designed RICO to redress the victimization of these types of enterprises by organized crime and other illegal ventures. See Section I(B)(1) above. For example, the Senate Report regarding RICO states: Model Penal Code § 240.1 (1980). The Explanatory Note to Section 240.1, explained that:The bribery offense abandons the usual focus upon "corrupt" agreements or a"corrupt" intent and instead spells out with more particularity the kinds of arrangements that are prohibited. . . . The offense is defined so as not to require proof of an actual agreement or mutual understanding. It thus reaches the inchoate behavior of either party accompanied by a purpose to achieve the prohibited understanding.

## 2. **RICO and Electronic Surveillance**

Section 2516(1)(c) of Title 18, as amended in 1970, permits the interception of any wire, oral, or electronic communications when that interception may provide, or has provided, evidence of any offenses punishable under 18 U.S.C. § 1963. Because a RICO violation is based on violations of other statutes, conduct involving violations of these other statutes can also serve as a basis for electronic surveillance, even if not specifically authorized in 18 U.S.C. § 2516, as long as these other offenses are within the scope of RICO. For example, in United States v. Daly, 535 F.2d 434, 439-40(8th Cir. 1976), the defendant argued that the wiretap authorization was used for a purpose (mail fraud) not authorized by 18 U.S.C. § 2516. The court rejected this argument because mail fraud is a predicate offense under 18 U.S.C. § 1961 and the wiretap order authorized interception of conversations relating to mail fraud racketeering activities violative of 18 U.S.C. § 1962, which is authorized by section 2516.

Evidence of Uncharged Crimes is Admissible to Prove the Existence of the Enterprise, a RICO Conspiracy, a Defendant's Participation in Both, Continuity of the Pattern of Racketeering Activity and Other Matters In RICO cases, courts typically admit evidence of crimes not specifically charged against a defendant or not committed by the defendant. For example, in United States v. Finestone, 816 F.2d 583, 585-87 (11th Cir.), cert. denied, 484 U.S. 948 (1987), the Eleventh Circuit upheld the admission proper in district where at least one overt act and one predicate act occurred); United States v. Rastelli, 653 F. Supp. 1034, 1054 (E.D.N.Y. 1986) (venue for a conspiracy charge "lies wherever the overt act or the agreement to conspire took place"); Persico, 621 F. Supp. at 857-58 (conspiracy venue proper in any district where an overt act occurred); see also cases cited in n.476 above. I am seeking unspecified damages, thank you.

**Citations:**

United States v. Zakarian et al.,
United States v. Tillman et al.,
United States v. Sacco et al.,
United States v. Dawson et al.,
United States v. Cipoletti et al.,

The Defendants are guilty of Espionage and Conspiracy to commit Espionage (colloquially, spying) is the obtaining of information considered secret or confidential without the permission of the holder of the information.[1] Espionage can be committed by an individual or a spy ring (a cooperating group of spies), in the service of a government or a company, or operating independently. The practice is inherently clandestine, as it is by definition unwelcome and in many cases illegal and punishable by law. Espionage is a subset of "intelligence" gathering, which includes espionage as well as information gathering from public sources.

Espionage is often part of an institutional effort by a government or commercial concern. However, the term is generally associated with state spying on potential or actual enemies primarily for military purposes.

## "WRIT OF EXECUTION"

The United States federal government (in comparison to the separate states) applies the death penalty for crimes: treason, terrorism, espionage, federal murder, large-scale drug trafficking, and attempting to kill a witness, juror, or court officer in certain cases. Military law allows execution of soldiers for several crimes, **Capital punishment** is a legal penalty in the U.S. state of **Utah**.

Utah was the first state to resume executions after the 1967-1976 national moratorium on capital punishment, when Gary Gilmore was shot to death in 1977. Utah is also the only state to have since carried out executions by firing squad, thank you.

Date: **August 10, 2017**

Signature:

SSN: **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**

Name: **AZAEL DYTHIAN PERALES**

CDL: **A2093574**

**(Typed or Printed)**
Address: **P.O. Box 501 Fullerton, California 92836 (Homeless)**

Telephone No. **(714) 732-8532**

30